[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The 46 year old plaintiff wife and the 49 year old defendant husband intermarried on August 23, 1969 at Middlebury, Connecticut. The court has jurisdiction based on the plaintiff's continuous residence in this state for more than one year prior to the commencement of this suit brought to have the marriage dissolved on the ground of irretrievable breakdown. The parties have one adult child but no minor children. Both parties are in good health except the plaintiff is asthmatic.
The plaintiff received an Associate's Degree in Secretarial Science from Post Junior College in 1970, completing a sole remaining course after the marriage. She worked in a family oil business run by her brother for several years after leaving a book store position. From 1986 through 1988 she also worked as a substitute teacher in the Naugatuck school system and for a temporary office company, Jaci Carroll.
The defendant found the idea for a new business in Inc. Magazine described as the rebuilding of printer and copier toner cartridges which the plaintiff has been running from her home. The business presently services customers in the greater Waterbury area, and is known as ABR (i.e. A Better Recharge System), (Plaintiff's Exhibit B). The parties' son helps with pick-ups and deliveries part time. The value of ABR is not given on the plaintiff's affidavit. It had $7,000 accounts receivable of which $2,000 were overdue, liabilities estimated by plaintiff of $3,000 to $4,000, and tangible assets of between $5,000 and $6,500. It is obviously a one person business, some of which business is obtained by virtue of the plaintiff's minority status as a female owner. Without the plaintiff as owner and operator, the court is satisfied that the "break-up" value ABR is as given above of under $10,000 equity.
The parties also jointly own their home located at 136 Three Mile Hill, Middlebury. The plaintiff values it at $260,000 on her financial affidavit and the plaintiff's expert witness testified it had a fair market value of $303,000 as of October 14, 1992. He had previously valued it at $310,000 as of February, 1992.
The original house was purchased by the parties in 1972 for CT Page 11549 $31,000 with $15,000 down, provided by the plaintiff's parents as a gift. It contained 1,048 square feet of living space with two bedrooms on one floor and an attached garage (Plaintiff's Exhibit G).
The plaintiff's mother died in 1983 and the plaintiff's father came to live with the parties some time thereafter when he experienced failing health. A second story was added to the house, with $80,000 paid by the plaintiff's father, including residing the entire house with vinyl siding. The living area was more than doubled, (c.f. Plaintiff's Exhibit H). Plaintiff's father remained eleven months at the parties' home.
The parties added a family room, a pool with decking, cleared up credit card balances, bought a Toyota for $16,000 and paid off a prior second mortgage resulting in the home now being encumbered by a $27,000 first mortgage and a $60,000 second mortgage.
The defendant, a college graduate who enjoys good health, has been a salesman throughout the marriage. Ten years ago he quit his job without any prior discussion with the plaintiff causing plaintiff to be extremely upset. Again, two years ago, the defendant quit his position causing plaintiff to be upset. He attempted to work alongside the plaintiff in ABR but the friction being caused proved too great. He was able to return to work for his ex-employer.
The defendant has recently begun a business known as TCR which is being run from the home of the defendant's parents, (Plaintiff's Exhibit I), to compete with ABR.
The breakdown of this marriage developed over time. In 1974 or 1975 the parties engaged in "marriage encounter". At the defendant's 40th birthday party given by the plaintiff, the defendant twice "mooned" the guests. The plaintiff testified she then told him she would see a lawyer if he did it again. The defendant pulled the top of the plaintiff's bathing suit down, once at a pool party and once at a picnic.
The plaintiff gained over 100 pounds during the marriage, 70 pounds of which she has lost since starting this action. A friend of the plaintiff's testified to the strained relation that existed between the parties. She described the defendant's conduct toward the plaintiff as sarcastic and belittling. The court finds this witness credible. It is also found as fact that the defendant CT Page 11550 continued to smoke cigars in plaintiff's presence and in their home after the plaintiff's asthma was diagnosed.
Finally, shortly after the defendant quit his position in August, 1990, the plaintiff told the defendant she was thinking of ending the marriage, which the defendant testified put him into shock for two days after which, by the defendant's own admission, everything went down hill. The defendant then commenced a search of plaintiff's clothes, dresser drawers, lock boxes and uncovered indicia that the plaintiff had a male friend. He was called as a witness. He acknowledged knowing the plaintiff for ten (10) years. The court finds no reason to infer that this friendship was anything but platonic prior to the marriage breakdown which the court concludes was beyond repair as of September, 1990.
The plaintiff is one of five legatees under the will of her father, the late Edmund Kiernan, whose will is being probated in the Waterbury Probate Court. The unchallenged testimony of the executor stated the plaintiff should receive between $40,000 to $45,000, (c. f. Defendant's Exhibit #1).
There is a parcel of commercial real estate held by the trustee under the will of the late Katherine C. Kiernan, the plaintiff's mother. The parcel is presently under contract of sale for $350,000 provided all environmental problems are eliminated, (Defendant's Exhibit #23). The plaintiff testified that since it was where her father's oil business was located, the property is in fact contaminated. It is conjecture on the court's part to assign any value to this 20% interest of plaintiff in the trust.
The defendant has two profit sharing plans which he listed for a total value of $35,000. He lists the second mortgage both under liabilities and again under mortgage. His remaining debts list $9,634 of credit card debt, $574 for a health club membership, $1,223 to Travelers, $12,420 to GMAC for the 1990 Chevrolet station wagon loan and $4,000 to his parents. The Travelers loan is also deducted twice. He is presently collecting unemployment of $292 weekly.
Much was made of the plaintiff's employment for two months at a hot dog stand. The evidence was interesting but immaterial.
Having examined the evidence in light of the statutory criteria, the court enters the following judgment. CT Page 11551
1. All of the allegations of the plaintiff's complaint are found proven and a decree is entered dissolving the parties' marriage on the ground alleged.
2. The plaintiff shall retain sole ownership of the business known as A Better Recharge System.
3. The plaintiff shall retain her legacy and her 20% trust interest as her sole property.
4. The plaintiff is awarded exclusive possession of the marital home as of January 1, 1993.
5. The real estate is ordered sold. It shall be placed on the market immediately with a licensed real estate broker on terms the parties agree upon. At any time thereafter until closing, either party may move the court for further orders to effect the sale. At closing, the net proceeds are ordered divided 70% to the plaintiff and 30% to the defendant.
Until sold, the plaintiff shall pay the utilities, insurance and 70% of each mortgage installment. The defendant shall pay 30% of each mortgage installment. The plaintiff shall be responsible to keep the real estate in its present condition allowing for reasonable wear and the defendant shall contribute 30% of any amount over $200 for any needed repair.
6. The contents of the family home are awarded to the plaintiff as her sole property.
7. The defendant shall retain his profit sharing plans as his sole property.
8. The defendant shall pay to the plaintiff the sum of $1.00 yearly as periodic alimony until the remarriage of the plaintiff or the death of either party.
9. Each party shall have sole responsibility for the debts listed on the respective financial affidavits.
10. Each party shall otherwise retain their remaining assets as presently possessed including motor vehicles as presently registered. CT Page 11552
11. The plaintiff's maiden name of Kiernan is restored to her.
12. Each party shall bear whatever litigation expenses each has incurred.
The attorney for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.